UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      Case No. 19-20492

v.

                                    HON MARK A. GOLDSMITH

TRISTAN MURPHY,

        Defendant.
_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION FOR BOND AND REVOCATION OF THE
ORDER OF DETENTION (Dkt. 66)**

This matter is before the Court on Defendant Tristan Murphy's motion for bond and revocation of the order of detention (Dkt. 66). Murphy is charged with conspiracy to commit Hobbs Act robberies in violation of 18 U.S.C. § 1951(a) (Dkt. 76). On August 22, 2019, Murphy initially consented to detention pending trial (Dkt. 54). On September 23, 2019, this Court held a hearing regarding Murphy's motion for bond. For the reasons stated below, the Court denies Murphy's motion.

**I. BACKGROUND**

On August 20, 2019, Murphy made his initial appearance in court following his arrest in connection with a series of "smash and grab" robberies at jewelry stores across the United States. Compl. ¶ 5 (Dkt. 1). The FBI has investigated over thirty such robberies fitting a similar description and determined that many of the robberies involved subjects living in the Detroit area. Id. Typically, two groups would drive from Detroit to the robbery location in separate vehicles: one group in a vehicle that was properly registered or lawfully rented, and another group in a stolen

1

vehicle that could be abandoned immediately after the robbery. Id. ¶¶ 12, 14, 18, 21. The robbers would enter the targeted store, use sledgehammers to break glass enclosures, and take diamonds and other jewelry. 2d Superseding Indictment ¶ 3 (Dkt. 76). After abandoning the stolen car, both groups would travel back to Detroit in the clean vehicle. Compl. ¶ 12. Murphy is alleged to have taken an active role in a robbery on June 11, 2019, in Jacksonville, Florida.

## II. ANALYSIS

The release or detention of a federal defendant pending trial is governed by the Bail Reform Act, 18 U.S.C. § 3142. Generally, "[t]he default position of the law . . . is that a defendant should be released pending trial." United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010). Under § 3142, a defendant may be detained pending trial if a judge "'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" Id. (quoting 18 U.S.C. § 3142(e)). In determining whether any condition or combination of conditions would reasonably assure the appearance of the defendant and the safety of the community, courts must evaluate the available information concerning: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed by the defendant's release. 18 U.S.C. § 3142(g). The Government bears the burden of persuasion and must prove risk of flight by a preponderance of the evidence, and danger to another person or the community by clear and convincing evidence. United States v. Hinton, 113 F. App'x 76, 77-78 (6th Cir. 2004).

If a defendant is charged with a crime of violence, however, it is presumed that no condition or combination of conditions will assure the appearance of the defendant or the safety of the community. 18 U.S.C. §§ 3142(e)(3); Stone, 608 F.3d at 945. This presumption imposes on the

defendant the burden of producing evidence that he does not pose a danger to the community or a risk of flight. Stone, 608 F.3d at 945. Murphy has been indicted for committing a robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a), an offense that qualifies as a crime of violence. See United States v. Gooch, 850 F.3d 285, 290 (6th Cir. 2017). Because a grand jury has determined that probable cause exists that Murphy committed the charged offense, it may be presumed under 18 U.S.C. § 3142(e)(3) that no condition or combination of conditions will reasonably assure Murphy's appearance and the safety of the community. See Stone, 608 F.3d at 945 ("[W]hen the government presents a[] [grand jury] indictment including charges listed in section 3142(e), it has fulfilled its burden to establish the presumption in favor of detention.") (citations omitted). The Government does not contend that the presumption applies in the present case. After conducting a hearing on September 23, 2019 and considering the filings and arguments of counsel and the pretrial services report, the Court concludes that denial of Murphy's motion is proper regardless of whether the presumption applies, as the statutory factors set forth above favor Murphy's detention pending trial.

With respect to the first factor, the nature and circumstances of the offense charged, Murphy has been indicted for allegedly conspiring to interfere with commerce by robbery or threatened force, violence, or fear of physical injury – an offense carrying a twenty-year statutory maximum sentence. See 18 U.S.C. § 1951(a). The indictment alleges, and the Government presented evidence during the hearing, that on June 11, 2019, Murphy was involved in the violent robbery of a jewelry store in Jacksonville, Florida, as part of a sophisticated and relentless conspiracy aimed at stealing diamonds from jewelry stores across the country since 2018. 2d Superseding Indictment ¶¶ 2-3; Compl. ¶¶ 5, 18.

The Government has submitted surveillance footage from the Jacksonville jewelry store

3

documenting the robbery. Surveillance Video, Ex. A to Gov't Resp. (Dkt. 72-1). The video shows that one of the suspects – alleged to be Murphy – was allowed into the jewelry store after knocking and asking if he could use the restroom. Id.; Compl. ¶ 19. Minutes later, two suspects wearing hoods forced their way into the store by pulling on the store's interior locked doors hard enough that the doors opened. Surveillance Video. As the two suspects ran into the store, the suspect alleged to be Murphy emerged from the restroom, grabbed a fleeing employee, knocked her to the floor, and dragged her by her shirt across the floor before pulling her to her feet and forcing her into another area of the store. Id. Another suspect forced two other employees to the floor, while demanding the employees open the display cases. Id. The third suspect, armed with a hammer, went to another set of display cases, looking for items of interest to take. Id.

Before the suspects could take any of the jewelry, local officers arrived on scene. Compl. ¶ 20. The suspects fled, dropping a hammer and bag they had brought with them; however, they were apprehended after a brief foot chase. Id. The suspects were later identified as Murphy and two other individuals from Detroit, Michigan. A fourth suspect, who had been waiting in a getaway car, fled the scene. Id. ¶ 21. This vehicle was later stopped in Georgia, and the driver was placed under arrest – this person was likewise from Detroit, Michigan.

As a whole, the nature of the smash and grab conspiracy was grave, as it operated across the country for months and resulted in the theft of hundreds of thousands of dollars' worth of jewelry. Murphy's allegedly active role in carrying out the Jacksonville robbery was undeniably serious. The robbery took place during the store's operating hours, thereby placing store employees and potential customers in harm's way. Indeed, Murphy is alleged to have used significant force against the jewelry store employees. Murphy's claimed lack of involvement and assertion of "mere presence" at the scene of the robbery is unpersuasive in light of the surveillance

video and still photographs incorporated in the Government's response to Murphy's motion for bond. Given the disturbing nature of the attempted robbery as demonstrated in the surveillance video, Murphy's release would pose a substantial risk of danger and, therefore, weighs in favor of his continued detention.

When evaluating the second factor, the weight of the evidence against a defendant, courts are to consider the "the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." Stone, 608 F.3d at 948 (citing United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985)). The evidence presented by the Government includes the surveillance video of the attempted robbery and receipts for gloves and hammers allegedly used during the robbery that were discovered in the getaway car apprehended in Georgia. See Receipts, Ex. B to Gov't Resp. (Dkt. 72-2). The Court has described in detail the violence employed during the attempted robbery, as captured on the video. The Government also proffers evidence of social media posts by various alleged co-conspirators. For example, only four days after Murphy was arrested, an alleged co-conspirator, using the Instagram account "doitfor_diamond," re-posted a message referencing "losing soldiers," and stating that "y'all can't count us out #teambag."[1]

This evidence demonstrates not only Murphy's dangerousness through his alleged use of violence but also the relentless nature of the robberies. Specifically, the social media posts suggest that Murphy's alleged co-conspirators were not deterred, even when other suspects were arrested. If anything, the social media evidence suggests that arrests and attention from the FBI only emboldened the crew. On June 18, 2019, only one week after Murphy's arrest, another robbery took place at a jewelry store in Collierville, Tennessee. Compl. ¶ 26. As in Jacksonville, a three-

---

[1] "Re-posting" means to post a picture that someone else has previously posted, usually by taking a screen shot of the picture and posting that screen shot.

member crew of robbers attempted to flee with diamonds and jewelry with a combined retail value of $726,817. Id. This perseverance poses the danger that, were Murphy to be released, he would resume his alleged involvement in the robberies. The weight of the evidence demonstrating Murphy's dangerousness and risk of flight, therefore, favors detention.

In evaluating the third factor, a defendant's history and characteristics, courts are to consider, among other factors, the defendant's physical and mental condition, family and community ties, employment, financial resources, past conduct, criminal history, and record concerning appearance at court proceedings. 18 U.S.C. § 3142(g)(3). While the Court credits Murphy's family and community ties and his prior employment, these factors do not sufficiently outweigh the other factors establishing Murphy's risk of flight and the danger he would pose to the community if he were released.

As noted in the pretrial services report, Murphy has at least two outstanding arrest warrants for failing to appear in two separate courts. The first warrant was issued after Murphy failed to appear on a charge for larceny – conduct similar in nature to the jewelry theft presently charged. The second warrant was issued after Murphy failed to appear in court to sign probation terms in connection with a charge for possession of marijuana. When Murphy was thereafter arrested on an unrelated matter, he was sentenced to a ten-day work program in connection with this second warrant and for violating probation; however, Murphy failed to complete any days toward this work program.

After careful investigation into Murphy's family ties, work history, and other pertinent factors, including the consideration of his prior criminal conduct, substance abuse history, and mental health issues, pretrial services recommended that Murphy be detained pending trial, as "no condition or combination of conditions will reasonably assure the appearance of the person as

6

required and the safety of any other person and the community." Indeed, Murphy's multiple failures to appear in court, his failure to comply with the terms of his probation, his criminal history, and his involvement with an organization involved in serial robberies across the United States all demonstrate his dangerousness and risk of flight. Murphy's history and characteristics thus weigh heavily against his release.

Finally, the Court must consider the fourth factor, the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. As discussed above, the smash and grab conspiracy was not a small-time, local operation. It operated consistently and efficiently for months across the country. During the Jacksonville robbery, multiple individuals stormed into a jewelry store while it was open to the public and intentionally engaged in intimidating tactics to place the employees in fear for their lives. Murphy allegedly took an active and violent role in the robbery, as he chased after an employee, pushed her to the floor, and then dragged her to another part of the store. Further compounding the danger posed by Murphy's violence, as noted above, is the relentlessness of the conspiracy. The prolific nature of the operation is best displayed by the fact that multiple arrests did little to slow the robberies. Given the persistence of the conspiracy, the danger to the community posed by Murphy's release would be significant.

Furthermore, Murphy's suggestion that he reside at his mother's house with electronic monitoring is not a reasonable alternative to detention; his criminal conduct and prior failures to appear reveal the folly of this option. Murphy lived with his mother at the time he was noncompliant while on probation and bond, and at the time he chose to travel cross-country to engage in the smash and grab conspiracy. It is clear, therefore, that the presence of Murphy's mother has not previously deterred his criminal conduct.

Nor is it realistic for Murphy to be placed on a GPS tether. Electronic monitoring would only show pretrial services his location, but would do nothing to prevent him from being an ongoing danger to the community. The individuals involved in this conspiracy made good use of social media, both in recruiting and in planning. A GPS tether would not prevent Murphy – from the comfort of his residence – from recruiting and planning more robberies, contacting co-conspirators, or making arrangements to flee. Moreover, if motivated once again to fail to appear in Court, Murphy could potentially cut off his tether.

### III. CONCLUSION

Based on the Court's review of the § 3142(g) factors, Murphy has not rebutted the presumption that he is a danger to the community. Moreover, a preponderance of the evidence establishes that Murphy should be detained because he poses a significant flight risk. Likewise, clear and convincing evidence demonstrates that Murphy would pose a danger to another person or the community were he to be released. For these reasons, the Court denies Murphy's motion for bond and for revocation of the detention order.

SO ORDERED.

Dated: October 16, 2019  s/Mark A. Goldsmith
 Detroit, Michigan MARK A. GOLDSMITH
 United States District Judge