UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                    Case No. 19-cr-20492

v.

                                    HON. MARK A. GOLDSMITH

D-3 TRISTAN MURPHY,

       Defendant.

_____/

**OPINION & ORDER**
**DENYING WITHOUT PREJUDICE DEFENDANT'S EX PARTE APPLICATIONS FOR**
**AN ORDER AUTHORIZING RULE 17(c) SUBPOENAS (Dkts. 177, 178)**

This criminal case involves multiple defendants, all of whom have been charged with involvement in a series of "smash and grab" robberies at jewelry stores across the United States. Defendant Tristan Murphy has filed two applications requesting orders authorizing the issuance of subpoenas duces tecum under Federal Rule of Criminal Procedure 17(c) and seeking the production of payroll records from his former employers documenting dates and hours he worked (Dkts. 177, 178). For the reasons discussed below, the Court denies Murphy's applications.

## I. BACKGROUND

A federal grand jury indicted Murphy for conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), stemming from his alleged involvement with a series of robberies at jewelry stores between November 2018 and July 10, 2019. 2d Superseding Indictment ("Indictment") (Dkt. 76). The FBI investigated over thirty robberies fitting a similar description and determined that many of the robberies involved subjects living in the Detroit area. Compl. ¶ 5 (Dkt. 1). Typically, two groups would drive from Detroit to the robbery location in separate vehicles: one group in a vehicle that was properly registered or lawfully rented, and another group in a stolen vehicle that could be abandoned immediately after the robbery. Id. ¶¶ 12, 14, 18, 21. The robbers would enter the targeted store, use sledgehammers to break glass enclosures, and take

diamonds and other jewelry.  Indictment ¶ 3.  After abandoning the stolen car, both groups would travel back to Detroit in the clean vehicle.  Compl. ¶ 12.

Defendant Darrell Reed is the alleged leader of the conspiracy, while Defendants Kai Rivers and Devon Newby are alleged to have assisted Reed with the organization and management of the conspiracy.  Indictment ¶¶ 4-5.  Murphy is allegedly a subordinate who took an active role in a robbery on June 11, 2019, in Jacksonville, Florida.  Id. ¶ 6; Compl. ¶¶ 18-20.

In his applications, Murphy seeks authorization to issue subpoenas duces tecum to his former employers Fontana Forest Products ("Fontana") and Crown Staffing Solutions ("Crown").  See Proposed Fontana Subpoena, Ex. to Fontana Application (Dkt. 177-1); Proposed Crown Subpoena, Ex. to Crown Application (Dkt. 178-1).  In an effort to establish an alibi defense, Murphy seeks production of his payroll records documenting dates and hours he worked between November 1, 2018, and June 11, 2019.  Proposed Fontana Subpoena; Proposed Crown Subpoena.

## II.  STANDARD OF DECISION

Federal Rule of Criminal Procedure 17(c) authorizes the issuance of subpoenas duces tecum in federal criminal proceedings.  A subpoena issued pursuant to this rule "may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1).  The rule further provides that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered into evidence." Id.  The court may also "permit the parties and their attorneys to inspect all or part of those items when they arrive."  Id.

But courts do not rubber-stamp such applications. The Supreme Court has repeatedly emphasized that Rule 17(c) was not intended to expand the scope of discovery in criminal cases. United States v. Nixon, 418 U.S. 683, 698-699 (1974) (noting the rule's "chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials") (citing Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951)); see also United

States v. Llanez-Garcia, 735 F.3d 483, 494 (6th Cir. 2013) ("Rule 17(c) is not meant to provide an additional way to secure pretrial discovery."); United States v. Jannuzzio, 22 F.R.D. 223, 228 (D. Del. 1958) ("[T]he purpose of a subpoena duces tecum is to enable a party to obtain evidence at the trial to use in support of his case—not to pry into the case of his adversary.") (emphasis in original).

Thus, the moving party must satisfy the following four conditions before a Rule 17(c) subpoena will issue: (i) the documents are evidentiary and relevant; (ii) the documents are not otherwise procurable through the exercise of due diligence prior to trial; (iii) the party cannot properly prepare for trial without the pretrial production and inspection of the documents; and (iv) the application was made in good faith and is not a fishing expedition. Nixon, 418 U.S. at 699-700; United States v. Hughes, 895 F.2d 1135, 1146 (6th Cir. 1990) (same).

The moving party must show that the requested materials are admissible, as well as identify and describe the documents with sufficient specificity. See Nixon, 418 U.S. at 700. This latter specificity requirement ensures that a Rule 17(c) subpoena will not be used as a "fishing expedition to see what may turn up," and it is often the most difficult hurdle to overcome. United States v. Wittig, 250 F.R.D. 548, 552 (D. Kan. 2008) (citation and quotation marks omitted); United States v. Libby, 432 F. Supp. 2d 26, 32 (D.D.C. 2006). A party's request will generally be sufficiently specific if "it limits documents to a reasonable period of time and states with reasonable precision the subjects to which the documents relate." Wittig, 250 F.R.D. at 552; see also United States v. Shanahan, 252 F.R.D. 536, 540 (E.D. Mo. 2008) ("As the period of time increases, so must the subpoena's particularity."). "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes something useful will turn up, the requirement of specificity will not have been met." United States v. Tucker, 249 F.R.D. 58, 62-63 (S.D.N.Y. 2008); accord Wittig, 250 F.R.D. at 552 ("The specificity and

relevance requirements demand more than the title of a document and conjecture concerning its contents.").

## III. DISCUSSION

As stated above, Murphy seeks production of Fontana's and Crown's payroll records documenting "dates of work and hours worked (including start time and end time each day worked) from the time period of November 1, 2018 to June 11, 2019." Fontana Application ¶ 4 (Dkt. 177); Crown Application ¶ 4 (Dkt. 178). Murphy's sparsely pleaded applications, however, fail to establish that these records are relevant and not otherwise procurable, as required under Nixon.

First, Murphy contends in conclusory fashion that the payroll records are relevant and necessary to establish an alibi defense "if the government claims that [he] was present at a robbery at any time that [he] was working." Fontana Application ¶ 3; Crown Application ¶ 3. In his notice of intent to offer an alibi defense, Murphy indicates his intent to use payroll records to establish that he was working in Michigan on April 10, 2019, and May 8, 2019, the dates robberies allegedly took place in South Carolina and Louisiana, respectively. Notice of Intent at 3 (Dkt. 179).[1] But Murphy's proposed subpoenas are overbroad, as he has not explained the relevance of payroll records covering the entire seven-month period from November 1, 2018, through June 11, 2019. The complaint alleges that Murphy was present at a robbery that took place on June 11, 2019, but neither the complaint nor the indictment alleges whether Murphy was present during any other robberies. Murphy intends to use payroll records to establish alibi defenses with respect to robberies that took place on April 10 and May 8, 2019. However, he has not specified, based on the available discovery, whether the Government is expected to allege that he was present at any robberies in addition to those that took place on April 10, May 8, and June 11, 2019. Consequently,

---

[1] Additionally, Murphy indicates his intent to offer an alibi defense with respect to a robbery that took place on June 18, 2019. Notice of Intent at 4. This alibi is not premised on Murphy's payroll records but rather on the fact that he was in custody following his June 11, 2019 arrest. Id.

the relevance of Murphy's physical location on dates other than April 10, May 8, and June 11, 2019, has not been explained.  Absent more concrete indicia of relevance, the Court is unable to conclude that Murphy has satisfied this Nixon factor.

Second, Murphy makes no attempt whatsoever in his applications to demonstrate that the payroll records are not otherwise procurable through the exercise of due diligence.  He has not indicated whether he has attempted to obtain the records directly from Fontana and Crown without a subpoena.  Therefore, Murphy has not established that a subpoena is necessary to obtain the records.

Consequently, Murphy has failed to establish all of the Nixon factors necessary for the Court to authorize the issuance of a subpoena under Rule 17(c).

## IV.  CONCLUSION

For the reasons stated above, the Court denies without prejudice Murphy's applications requesting an order authorizing the issuance of subpoenas under Federal Rule of Criminal Procedure 17(c) (Dkts. 177, 178).

SO ORDERED.

Dated:  July 6, 2020                                    s/Mark A. Goldsmith
     Detroit, Michigan                          MARK A. GOLDSMITH
                                                United States District Judge